UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN RANGEL,<br><br>    Plaintiff,<br><br>v.<br><br>V. WILLIAMS, et al.,<br><br>    Defendants. | Case No. 21-cv-00278-JSC<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO COMPEL; SCHEDULING SUMMARY JUDGMENT MOTION BRIEFING**<br><br>Re: Dkt. Nos. 26, 42 |

**INTRODUCTION**

Plaintiff, a California prisoner proceeding without representation by a lawyer, filed this civil rights complaint under 42 U.S.C. § 1983 against officials at Salinas Valley State Prison ("SVSP") for failing to provide adequate medical care for his broken finger.[1] The Court found the Complaint, when liberally construed, stated cognizable claims for relief against Defendants under the Eighth Amendment. Defendants filed a motion to dismiss Plaintiff's claim against Defendant G. R. Padilla under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Padilla did not know about Plaintiff's injury until it was properly treated. Plaintiff filed an opposition, and Defendants filed a reply brief. Plaintiff also filed a motion to compel discovery, to which Defendant filed an opposition, and Plaintiff filed a reply brief. For the reasons discussed below, the motion to dismiss is GRANTED, and the motion to compel is DENIED.

**FACTUAL BACKGROUND**

The following facts are alleged in the Complaint and its attachments. (ECF No. 1.) On February 18, 2020, Plaintiff injured his finger while playing sports at SVSP. (*Id.* at 6.) On February 24, he submitted a form requesting medical treatment and complaining of pain, swelling,

---

[1] All parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. (ECF Nos. 3, 13.)

and deformity. (*Id.* at 7.)

On February 26, he visited a small clinic within the prison, where Defendant V. Williams, a Registered Nurse, examined him. (*Id.*) She told him to bend his finger, which he did with pain. She told him that it was not broken because he could move it. (*Id.*) He requested an x-ray and evaluation by a doctor. (*Id.*) She told him he did not need one, but that he would receive a follow-up appointment a week later. (*Id.* at 7-8.)

His follow-up appointment took place on March 11, 2020, with Defendant Registered Nurse Pascual. (*Id.* at 8.) Plaintiff told her that his finger still hurt to the touch and to bend, and Pascual said that he would put Plaintiff on lists for an x-ray and doctor evaluation. (*Id.*) Pascual falsely wrote in Plaintiff's medical records that Plaintiff could move his finger "with no problem," and that Plaintiff reported that pain medication made his pain "minimal." (*Id.* at 8-9, 44.)

On March 23, Plaintiff requested follow-up care. (*Id.* at 9.) Williams examined Plaintiff again and told him again that his finger was not broken because he could move it. (*Id.*) She informed him that he was not on the lists for either x-ray or to see a doctor. (*Id.*)

Plaintiff received an x-ray appointment for April 3, which was rescheduled for April 8; the x-ray showed a broken bone in his finger. (*Id* at 9-10.) Defendant Dr. D. Nguyen examined Plaintiff following his x-ray, ordered immobilization of the finger, denied him pain medication, and referred him for a surgical consultation. (*Id.* at 10.) The next day, he received a splint. (*Id.* at 11.) On April 17, a surgeon outside the prison examined Plaintiff's finger. (*Id.*) On April 23, the surgeon operated upon and repaired his finger. (*Id.* at 11, 50.) Plaintiff alleges no further problems with his finger following surgery.

Plaintiff filed an administrative grievance on March 26 (No. SVSP HC 0000384) complaining about his medical care. (*Id* at 9, 58-61.) After being twice rejected as incomplete on April 7 and May 3, it was accepted as complete on June 12 and assigned to Registered Nurse M. Villanueva (who is not a Defendant) for investigation. (*Id.* at 55-56, 58.) Defendant Padilla, the Chief Executive Officer of SVSP, reviewed and denied it on August 5, 2020. (*Id.* at 52-54, 58.)

On April 19, 2020, Plaintiff filed two administrative staff complaints (Nos. SVSP SC

20000044 and SVSP SC 20000045)[2] against Williams and Pascual for their failure to treat his finger adequately. (*Id.* at 22-26, 32-36.) On June 24, 2020, Padilla reviewed these complaints; he found that Williams and Pascual violated prison policy, but he did not order any intervention because he found that the issues had been adequately addressed. (*Id.* at 11-12, 19-20, 29-30.)

## DISCUSSION

I. Standard of Review

Failure to state a claim is grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal for failure to state a claim is a ruling on a question of law. *Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotations omitted). Although in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1986-87. A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570; *see, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009).

Review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or

---

[2] These were initially numbered SVSP HC 20000508. (ECF No. 1 at 22, 32.)

1  documents the complaint necessarily relies on and whose authenticity is not contested. *Lee v.*
2  *County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). In addition, the court may take judicial
3  notice of facts that are not subject to reasonable dispute. *Id.* at 688 (discussing Fed. R.
4  Evid. 201(b)). Allegations of fact in the complaint must be taken as true and construed in the light
5  most favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988
6  (9th Cir. 2001). The court need not, however, "accept as true allegations that are merely
7  conclusory, unwarranted deductions of fact, or unreasonable inferences." *Ibid.*

8      A pleading filed by a party who is proceeding without assistance of a lawyer must be
9  liberally construed, and "however inartfully pleaded, must be held to less stringent standards than
10 formal pleadings drafted by lawyers." *Twombly*, 550 U.S. at 570 (quoting *Estelle v. Gamble*, 429
11 U.S. 97, 106 (1976)). Allegations of fact in the complaint must be taken as true and construed in
12 the light most favorable to the non-moving party. *Symington*, 51 F.3d at 1484.

13 II.    <u>Analysis</u>

14     Defendants argue that Plaintiff has not stated a cognizable claim against Padilla because
15 the Complaint's allegations and the attached records establish that Padilla did not know about
16 Plaintiff's finger injury until after it was repaired in surgery.

17     Deliberate indifference to a prisoner's serious medical needs violates the Eighth
18 Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97,
19 104 (1976). A determination of "deliberate indifference" involves an examination of two
20 elements: the seriousness of the prisoner's medical need and the nature of the defendant's response
21 to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other*
22 *grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A
23 prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of
24 serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v.*
25 *Brennan*, 511 U.S. 825, 837 (1994).

26     According to the Complaint and its attachments, Padilla was the SVSP CEO. (ECF No. 1
27 at 6.) A supervisor, such as Padilla, may be liable under section 1983 upon a showing of personal
28 involvement in the constitutional deprivation or a sufficient causal connection between the

4

supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012).

The Complaint and its attachments do not allege that Padilla was a medical professional personally involved in treating Plaintiff's finger injury. Instead, drawing all inferences in Plaintiff's favor, Padilla's involvement consisted of reviewing and rendering a decision on Plaintiff's administrative and staff complaints about his care. (ECF No. 1 at 11-12, 19-20, 29-30, 52-54.) He first reviewed the complaints on June 24, 2020, approximately two months after Plaintiff's injury was repaired in surgery on April 23, 2020. (*Id.* at 11, 50) Plaintiff alleges no inadequate medical care after surgery. Therefore, Padilla's review of and decisions on Plaintiff's complaints could not have caused the allegedly inadequate medical care for Plaintiff's finger because they took place occurred well after the allegedly inadequate care ceased.

Plaintiff faults Padilla for failing to intervene after the violation of his rights, when he reviewed the staff complaints; he asserts Padilla could have ordered further training or "changing policy." (ECF No. 1 at 13, 19-20, 29-30.) Plaintiff claims that this violated his Eighth Amendment rights because it encouraged the other Defendants to continue to provide inadequate medical care. A supervisor can be liable for her or his "culpable action or inaction in the training, supervision, or control of his subordinates; for [her or] his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted). A supervisor may also be liable for "a policy so deficient that the policy itself is a repudiation of constitutional rights." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991). As noted above, however, Plaintiff must also show that any wrongful conduct caused a constitutional violation. *See Henry A.*, 678 F.3d at 1003-04; *see also Redman*, 942 F.2d at 1446 (plaintiff must show that a deficient policy "is the moving force of the constitutional violation").

Here, the Complaint and its attachments do not support an inference that any conduct by Padilla caused Plaintiff to receive inadequate medical care or otherwise caused a violation of Plaintiff's constitutional rights. The allegedly inadequate medical care occurred before Padilla allegedly failed to order further training or change policy, and there are no allegations that any

constitutional violations against Plaintiff or other prisoners continued after Padilla's decision. As the Complaint and attachments, even when liberally construed, do not support a plausible inference that Padilla's conduct caused a violation of Plaintiff's constitutional rights, Plaintiff has not stated a proper claim for relief against him.

In his opposition, Plaintiff alleges that Padilla was the hiring authority and as such he should have disciplined or fired Williams and Pascual after finding that they had violated prison policy. As this allegation is not included in the Complaint or attachments, however, it cannot be considered in connection with a motion under Rule 12(b)(6). Moreover, even if it could be inferred from the current allegations (or alleged in an amended complaint) that Padilla should have fired them, there are no allegations that support a plausible inference that his not doing so after he reviewed the staff complaints caused Plaintiff to receive inadequate medical care or suffer some other constitutional violation.

Plaintiff also argues that Padilla learned about receiving inadequate medical care on April 22, the day before his surgery, because his staff complaints indicate that they were received on that date. The complaints show that they were received on that date by Registered Nurse M. Villanueva, not by Padilla. (ECF No. 1 at 22, 32.) As noted above, the Complaint and attachments allege that Padilla first learned of Plaintiff's medical care complaints on June 24, almost two months after the surgery repaired Plaintiff's broken bone. But even if Plaintiff could amend his complaint to allege that Padilla learned of the complaints the day before his surgery, Plaintiff would still not be able to allege that Padilla caused him to receive inadequate medical care given that he does not complain about the surgery; indeed, from the allegations it appears the surgery addressed his medical issue.

Plaintiff also argues the motion is untimely. It is not. The Court extended the time to file the motion to July 28, 2021, and it was filed two days before that deadline. (ECF Nos. 17, 26.)

III.   Motions to Compel

Plaintiff has filed a motion to compel the production of documents, and a motion to compel further responses to interrogatories. (ECF No. 42.) Defendants filed an opposition, and

1    they also filed Plaintiff's reply brief.[3]  (ECF Nos. 44, 45-1.)

2         As an initial matter, Plaintiff contends that Defendants' opposition, filed on December 14, 2021, should be disregarded as untimely.  The Court set the deadline for the opposition as 14 days after the motion to compel was filed (ECF No. 39 at 2:21-22), which was December 1, 2021.  However, the docket entry for the motion to compel indicates that the opposition was due on December 15, 2021.  (ECF No. 42.)  The understandable confusion caused by these conflicting deadlines excuses any untimeliness in the opposition, which was filed before the later deadline, and no prejudice to Plaintiff from this delay is asserted or apparent.

         1.    Motion to Compel Production of Documents

         The motion to compel the production of documents seeks two sets of documents: (1) Chapter 1, Article 1, and Chapter 1, Article 2, subsection 1.2.11, of the prison's Health Care Department Operations Manual ("HCDOM"); and (2) all notes, written statements, and reports regarding the staff complaints that Plaintiff filed against Defendants Williams and Pascual (SVSP SC 20000044 and SVSP SC 20000045).

         Defendants have shown that they have produced the portions of the HCDOM that Plaintiff requested, some of which Plaintiff received after filing the motion to compel.  (ECF No. 44-1 at 2:26-3:3; 44-2 Exhs. A, D.)  Plaintiff does not dispute this in his reply brief.  As a result, there appears no need to compel Defendants to produce these documents.

         The parties also do not dispute that Defendants have already produced the requested staff complaint documents that were not deemed confidential by prison officials under California Code of Regulations, Title 15, sections 3084.9(i)(3)(B)(1) and 3321(a)(1) and (2).  Defendants withheld those that were deemed confidential, however, under the official-information privilege.

         "Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990).  To determine whether the information sought is privileged, "courts must weigh potential benefits of disclosure against potential

---

[3] It appears from the docket that Plaintiff did not file his reply brief with the Court, possibly because of the "modified" lockdown at his prison.  (ECF No. 46 at 1-2.) The Court accepts the copy of Plaintiff's reply brief attached as an exhibit to defense counsel's declaration.  (ECF No. 45-1.)  The Court thanks Defendants for filing the reply.

7

1 disadvantages." *Id*. at 1033-34. The official-information privilege may be claimed upon a
2 showing of several factors, which must be evaluated on a case-by-case basis. *Kelly v. City of San
3 Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987). The party asserting the privilege must show how the
4 disclosure of the information would harm significantly law enforcement or privacy interests, what
5 interests would be harmed, how the disclosure under a protective order would cause the harm, and
6 how much harm would occur with the disclosure. *Id.* Moreover, when a party asserts the official-
7 information privilege, it must make timely objections in separate responses, along with a
8 declaration that includes: (1) an affirmation that the agency collected the material in issue and has
9 maintained its confidentiality; (2) a statement that the official has personally reviewed the material
10 in question; (3) a specific identification of the governmental or privacy interests involved; (4) a
11 statement of how disclosure, even with a protective order, would create a substantial risk of harm
12 to government or privacy interests; and (5) a projection of how much harm would be done to the
13 governmental or privacy interests if disclosures were made. *Id.* at 670. Defendants have supplied
14 a declaration by an official who has reviewed the withheld information and attests that the
15 complaint documents consist of "summaries of relevant medical records and summaries of
16 findings the registered nurse reviewers completed, indicating whether the actions taken and
17 clinical care provided were appropriate." (ECF No. 35-1 at 24:1-3.)
18 Defendants cite the following potential harms from disclosure of this information. They
19 argue that if the names of "nurse reviewers or other medical staff" were disseminated, they could
20 be harassed or assaulted by other inmates. (*Id.* at 24:3-5.) They argue that inmates could target or
21 harass medical staff based upon allegations of staff misconduct, and disclosing the reviewers'
22 names would engender discord among prison medical staff and harm provider-patient
23 relationships. (*Id.* at 24:5-12.) However, any such problems can be avoided for the nurse
24 reviewers by redacting their names before producing the documents, and Plaintiff has already
25 publicly named the medical staff who have allegedly provided inadequate care in his Complaint
26 and the attached staff complaints.
27 Defendants also argue that disclosure would harm the following interest: "Nurse reviewers
28 who are assured of the confidentiality of their findings may provide more accurate assessments of

1 past medical care. In addition, investigators are assured of the confidential nature of the
2 proceedings and encouraged to accurately report their findings." (*Id.* at 24:12-15.) The Ninth
3 Circuit has held, however, that peer review medical findings by prison officials are not privileged.
4 *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005). In *Agster*, the Ninth Circuit
5 considered whether a prison's medical provider could withhold from discovery as confidential a
6 peer review conducted about one of its deceased prisoners. *Id.* at 838. The *Agster* defendants
7 urged the Ninth Circuit to find peer review information privileged, but the court declined to do so
8 as a matter of federal common law based on the following reasoning:

> We are constrained by two considerations, one general and the other particular to this case. We must be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Univ. of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). The Health Care Quality Improvement Act of 1986 granted immunity to participants in medical peer reviews, but did not privilege the report resulting from the process. *See* 42 U.S.C. §§ 11101–11152. Congress amended the act in 1987 to state that "nothing in this subchapter shall be construed as changing the liabilities or immunities under law or as preempting or overriding any State law." Pub.L. No. 100–177, § 402(c). As Congress has twice had occasion and opportunity to consider the privilege and not granted it either explicitly or by implication, there exists a general objection to our doing so.
>
> The particular objection is that the privilege is sought to protect a report bearing on the death of a prisoner. Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

*Id.* at 839. These same reasons apply here. *Agster's* "general objection" that Congress did not grant the privilege when it had occasion to do so is no less applicable here than in *Agster*. And the "particular objections" of public access and accountability are no less applicable here, where the challenged medical care also took place in the prison context. *See*, *e.g.*, *Estate of Nunez v. County of San Diego*, 386 F.Supp.3d 1334, 1338 (S.D. Cal. 2019) (requiring disclosure of peer review

9

1  documents by prison officials regarding medical care provided in prison). Under *Agster*, peer
2  review documents related to reviewers' investigations and findings are not privileged.
3       When Defendants initially responded to Plaintiff's document requests, they included
4  additional objections that the requests are vague, ambiguous, overbroad, compound, and protected
5  by attorney-client, work product, and deliberative process privileges. (ECF No. 32 at 10.) At this
6  stage, the documents that are outstanding are simply the reviewers' summaries and findings in
7  connection with staff complaints SVSP SC 20000044 and SVSP SC 20000045. The request for
8  these documents is not vague, ambiguous, overbroad, or compound. Moreover, Defendants have
9  not shown that attorney-client, work product, or deliberative process privileges apply because
10 Defendants do not address these privileges in their opposition papers.
11      As Defendants have not met their burden of showing that the confidential findings and
12 summaries by nurse reviewers in connection with staff complaints SVSP SC 20000044 and SVSP
13 SC 20000045 are privileged from production, the Court orders Defendants to make them available
14 to Plaintiff, with the reviewers' names redacted if they so choose, as provided below.

     2.    <u>Interrogatories</u>

16      Plaintiff moves to compel Padilla, Williams, and Pascual to provide further responses to
17 certain interrogatories. (ECF No. 42 at 10-11.) Plaintiff served 25 interrogatories each on
18 Williams and Pascual and 24 on Padilla, and Defendants served Plaintiff with responses to those
19 interrogatories that included objections. (ECF No. 33-1, Exhs. A, C-F.) Plaintiff now seeks
20 further responses to 15 interrogatories from Padilla and eight interrogatories each from Williams
21 and Pascual. (ECF No. 42 at 10-11.)
22      As to Padilla's interrogatory responses, Plaintiff's motion is moot because the claims
23 against Padilla are dismissed, as discussed above. As to Williams and Pascual, Plaintiff
24 previously filed a motion to compel further responses to interrogatories from Defendants, but that
25 motion was denied because Plaintiff had failed to meet and confer with defense counsel in a good
26 faith attempt to resolve their disputes as required by Federal Rule of Civil Procedure 37(a)(1) and
27 Northern District of California Local Rule 37-1. (ECF No. 39.) The Court instructed Plaintiff that
28 any future motion to compel "must explain why any asserted objection or privilege does not

apply." (*Id.*) Plaintiff does not offer any explanation or argument as to why Defendants' objections do not apply, as he was instructed to do. Accordingly, his motion to compel further interrogatory responses is denied.

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss the claims against Defendant Padilla for failure to state a proper claim for relief is GRANTED. Plaintiff's motions to compel the production of documents is GRANTED IN PART, as described above. Within 14 days of the date this order is filed, Defendants shall make the documents described above available to Plaintiff. Plaintiff's motion to compel further answers to his interrogatories is DENIED.

No later than **91** days from the date this order is issued, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56 and shall include as exhibits all records and incident reports stemming from the events at issue. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

At the time the dispositive motion is served, Defendants shall also serve, on a separate paper, the appropriate notice required by *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc). *See Woods v. Carey*, 684 F.3d 934, 940-941 (9th Cir. 2012).

Plaintiff's opposition to the dispositive motion, if any, shall be filed with the Court and served upon Defendants no later than **28 days** from the date the motion is filed. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is provided to him pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc).

Defendants shall file a reply brief no later than **14** days after the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

//

//

11

This Order disposes of Docket Nos. 26 and 42.

**IT IS SO ORDERED.**

Dated: March 23, 2022

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

**NOTICE -- WARNING (SUMMARY JUDGMENT)**

If Defendants move for summary judgment, they are seeking to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact-- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in Defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.